**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Enrique M. SALINAS,
Defendant-Appellant.**

No. 80–1799.

United States Court of Appeals,
Fifth Circuit.
Unit A

Aug. 24, 1981.

---

Kevin T. O'Hanlon, Austin, Tex., for defendant-appellant.

LeRoy M. Jahn, Asst. U. S. Atty., San Antonio, Tex., William C. Bryson, Atty., U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before MARKEY *, Chief Judge, and GEE and POLITZ, Circuit Judges.

GEE, Circuit Judge:

On May 19, 1977, a grand jury returned a 49-count indictment against the present appellant, Enrique M. Salinas, and others,[1] charging violations of 18 U.S.C. §§ 371 (conspiracy),[2] 656 (misapplication of bank funds),[3] and 1005 (false entries upon bank

---

* Chief Judge of the U. S. Court of Customs and Patent Appeals, sitting by designation.

1. See United States v. Salinas, 601 F.2d 1279 (5th Cir. 1979) (Salinas I), for others named in the original indictment.

2. Section 371 provides:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.
>
> If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

3. Section 656 provides:

> Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank, or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.
>
> As used in this section, the term "national bank" is synonymous with "national banking association"; "member bank" means and includes any national bank, state bank, or bank and trust company which has become a member of one of the Federal Reserve banks;

records).[4] These charges grew out of the operation of the Citizens State Bank in Carrizo Springs, Texas. Following a lengthy trial,[5] the jury returned a guilty verdict on various counts. Salinas, the present appellant, was found guilty of conspiracy, four counts of making false entries in bank records, and twelve counts of misapplication of bank funds. On appeal, this court reversed the convictions on the misapplication counts, 601 F.2d 1279 (5th Cir. 1979) (*Salinas I*), but affirmed the convictions on the conspiracy and false entry counts. The appellant was sentenced to five years imprisonment and a $10,000 fine.

■ On remand, Salinas alone was retried on three of the misapplication counts that had been reversed. Following a jury trial, the appellant was convicted on all three counts. He was sentenced to two years imprisonment and a $5,000 fine on the first count, to run consecutively to the sentences that had previously been upheld on appeal. On the second and third counts, he was given two-year terms of imprisonment, which were made concurrent with the previous sentence. For the reasons set forth below, we reverse the judgment of conviction on count one and remand for a new trial consistent with this opinion. We affirm on counts two and three.[6]

## Amendment of Count One

In late 1975, the appellant was in the process of acquiring control of the Citizens State Bank of Carrizo Springs. In November 1975, appellant had his friend Lewis Woodul named as president of the bank, and on Woodul's recommendation appellant hired Woodul's partner, Dan Sanchez, as vice chairman of the bank's board of directors. Shortly after Woodul became president, appellant began using the bank to obtain loans on behalf of his friends, relatives, and associates. One of these improper loans was the subject of count one (count eight of the original indictment). This count charged that Woodul, the president of the bank, caused a misapplication of bank funds in connection with a $33,000 loan to Maverick Air, Inc. and that the appellant aided and abetted him in that offense. The indictment charged that the appellant, Woodul, and the president of Maverick Air (Ron Guess) knew at the time of the loan

and "insured bank" includes any bank, banking association, trust company, savings bank, or other banking institution, the deposits of which are insured by the Federal Deposit Insurance Corporation.

4. Section 1005 provides:
Whoever, being an officer, director, agent or employee of any Federal Reserve bank, member bank, national bank or insured bank, without authority from the directors of such bank, issues or puts in circulation any notes of such bank; or
Whoever, without such authority, makes, draws, issues, puts forth, or assigns any certificate of deposit, draft, order, bill of exchange, acceptance, note, debenture, bond, or other obligation, or mortgage, judgment or decree; or
Whoever makes any false entry in any book, report, or statement of such bank with intent to injure or defraud such bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, or the Board of Governors of the Federal Reserve System—

Shall be fined not more than $5,000 or imprisoned not more than five years, or both.
As used in this section, the term "national bank" is synonymous with "national banking association"; "member bank" means and includes any national bank, state bank, or bank or trust company, which has become a member of one of the Federal Reserve banks; and "insured bank" includes any state bank, banking association, trust company, savings bank, or other banking institution, the deposits of which are insured by the Federal Deposit Insurance Corporation.

5. The trial commenced on July 27, 1977, and was completed on August 11, 1977. The trial transcript consists of 3,665 pages.

6. Since the appellant's conviction on count one adds materially to the pains and penalties he would suffer (*i. e.*, a fine of $5,000), this is not an appropriate case to apply the discretionary concurrent sentence doctrine. *See Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *compare United States v. Restrepo-Granda*, 575 F.2d 524, 530 (5th Cir. 1978), *and United States v. Binetti*, 547 F.2d 265, 269 (5th Cir. 1977).

that it was not well secured, that the bank had no credit information on Maverick Air, and that, in fact, the aircraft pledged as collateral was pledged already to another lender.[7]

Testimony developed at trial, however, did not coincide with the terms of the indictment. The trial evidence showed that it was actually another government witness, the executive vice president of the bank, James Robert Nance, rather than Woodul, who authorized the loan at issue in count one. Woodul had no direct involvement with the $33,000 loan and apparently was not even at the bank at the time of the transaction. The trial judge avoided the difficulty through broad jury instructions:

Now, in order to establish that the defendant, Enrique Salinas, is guilty of count one of the indictment, the following essential elements must be proved beyond a reasonable doubt.

1. That the principal being considered in connection with count—with the count that you are then considering—that is, count one—was an officer, director or employee of the bank described in the indictment.

2. That the bank was in fact an insured bank.

3. That the principal being considered in connection with count one, being an officer, director or employee of the bank, knowingly and willfully misapplied funds or credits belonging to the bank or entrusted to its care.

4. That the principal being considered in connection with the count you are then considering—that is, count one—acted with the intent to injure and defraud the bank, and

5. That the defendant, Enrique M. Salinas, willfully aided and abetted the principal in said actions.

The appellant's motion for a judgment of acquittal, on the ground that there was no evidence that Woodul was involved in the Maverick loan, was denied. The trial judge in effect allowed the jury to convict if it found that the appellant aided and abetted the misapplication of funds by any officer, director, or employee of the bank. Appellant argues that the trial judge constructively amended the indictment; the government contends that the discrepancy between the proof and the indictment was merely a nonprejudicial variance.

This court has traveled this route before, to the detriment of the government's position. *Salinas I*, 601 F.2d at 1287–91, surveyed the distinction between a fatal "amendment" of an indictment and a permissible "variance" in the context of the same factual situation. Under the progeny of *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), a judicial amendment of the indictment is reversible error *per se*. In contrast, a variance in the proof justifies reversal only where the defendant has been prejudiced thereby. *See, e. g., United States v. Bryan*, 483 F.2d 88, 96 (3d Cir. 1973). This difference in treatment is attributable to the difference in the

---

7. The first count charges:

That on or about December 2, 1975, in the Western District of Texas, Defendant Lewis Woodul, being president of the Citizens State Bank, Carrizo Springs, Texas, and Defendants Ron Guess and Enrique M. Salinas aided and abetted by each other with intent to injure and defraud said bank, the deposits of which were insured by the Federal Deposit Insurance Company, did willfully and knowingly misapply and cause to be misapplied monies, funds and credits of said bank in the amount of $33,000 by causing that sum to be disbursed to Maverick Air, Incorporated, purporting to be a loan to the said Maverick Air, Incorporated, whereas, in truth and in fact, the Defendants well knew that a portion of said loan was a loan to the said Enrique M. Salinas and was to be converted to the personal use of the said Enrique Salinas, and that said Defendants also well knew at the time said monies and funds were disbursed, that the loan was not well secured and that the said Maverick Air, Inc., was not entitled to the credit of the bank, because no credit information on Maverick Air, Inc., was obtained, no attempt was made to verify ownership of the collateral purportedly pledged to secure the loan, no line in favor of the bank was perfected on the aircraft purportedly pledged as collateral, and in truth and fact, the collateral was already pledged elsewhere in violation of Title 18, United States Code, Section 656.

rights of the defendant that are affected. Where the indictment is amended, "the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury," *Stirone,* 361 U.S. at 217, 80 S.Ct. at 273, is violated. In contrast, where the evidence proves facts different from those alleged in the indictment—resulting in a variance—the defendant may be deprived of notice of the details of the charge against him. In *United States v. Bursten,* 453 F.2d 605, 607 (5th Cir. 1971), we quoted from a District of Columbia Circuit case, *Gaither v. United States,* 413 F.2d 1061 (D.C.Cir.1969), in articulating the difference between an amendment and a variance:

> An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment.

*Id.* at 1071 (emphasis in original). And in *United States v. Ylda,* 653 F.2d 912, 914 (5th Cir. 1981), we observed, "The misconstruction of an indictment is reversible error if it is possible that the defendant was tried and convicted for a crime other than that alleged in the indictment."

The original indictment at issue in *Salinas I* charged the present appellant with misapplying funds as a director of the bank. At trial the evidence showed that he was not in fact a director when the transactions at issue took place. The trial judge refused the appellant's requested instruction that he be acquitted if the evidence did not prove he was a director; instead, he charged the jury that it could convict if it found Salinas to be an officer, director, agent, or employee of the bank. We reversed the resulting conviction on the basis that this instruction "modified an essential element of the offense charged and thereby effectively amended the grand jury's indictment in violation of the fifth amendment." 601 F.2d at 1282. "Under *Stirone* this is

fatal error requiring reversal, for appellants may have been convicted on a ground not charged in the grand jury's indictment." *Id.* at 1290.

■ Our opinion in *Salinas I* requires that the appellant's conviction under count one be reversed. An essential element of the crime of aiding and abetting the misapplication of bank funds is that the named principal in fact misapplied these funds. By allowing the jury to convict if it found that the principal whom Salinas aided and abetted was an officer, director, employee, or agent of the bank when the indictment charged him only with aiding and abetting a specific named individual, Woodul, the trial judge modified an essential element of the offense in the same way that we held the trial judge did in *Salinas I.* The trial court's instructions in effect expanded the indictment to include other individuals not named in the indictment (*i. e.,* Nance). The grand jury could have named Nance. It could have charged "unnamed principals." It chose not to do so. Although it may be difficult to imagine that the identity of the principal involved would have had any effect on the grand jury's decision to return an indictment, the Supreme Court has cautioned against speculating as to what a grand jury would have done. *Stirone,* 361 U.S. at 217, 80 S.Ct. at 273. Once the grand jury has spoken, the defendant goes to trial prepared to defend these charges, and the government is bound to prove the essential elements of the charges specified in the indictment. *See United States v. Trexler,* 474 F.2d 369, 371 (5th Cir. 1973). The game's rules are fixed prior to the judge's charge to the jury.

There is no denying the considerable appeal of the government's argument. Without question, the particular loan was well described; nor is there question that the appellant aided and abetted *a* bank officer in the misapplication of bank funds. Theft, by any other name, is still theft. But the mistake in the particular name of the officer involved is not like a variance in a date or place. The *appellant* was not formally

charged with theft. The indictment said in effect that Woodul stole and that the appellant helped. Once it is shown that the named principal did not steal, it begins to look like the appellant was convicted of a crime different from that of which he was accused. *Compare United States v. Ylda, supra.*

The government also argues that the jury could have concluded that Woodul was guilty as a principal in the Maverick Air loan transaction since there is some evidence to suggest that Woodul set up the standard procedures under which Nance authorized the loan. While this approach avoids the amendment/variance difficulty, it does so at the expense of the trial record. It was uncontroverted at trial that Woodul had no direct or indirect involvement with the particular loan.

### Counts Two and Three

Appellant argues that the indictment was also constructively amended with respect to counts two and three (counts twenty-five and twenty-six of the original indictment). These counts involved loans made to Woodul and Sanchez for the benefit of appellant. They were part of a series of circuitous transactions designed to enable appellant to pay off his loan for the purchase of the stock of the bank. The counts charged the appellant with misapplication of bank funds as a principal and as an aider and abetter.[8] As the evidence showed that the appellant was not a director, and thus could not be a principal, the trial judge instructed the jury only on the aider and abetter theory.

Appellant claims that by omitting one of the two theories of liability on counts two and three, the district court improperly amended the indictment. The law, however, is clear that a court need not charge on surplusage or unproved allegations in an indictment if by so doing it narrows rather than broadens the charges against the defendant. *United States v. Glassman*, 562 F.2d 954, 975 (5th Cir. 1977). "[A] portion of an indictment that the evidence does not support may be withdrawn from the jury, and this is not an impermissible amendment, provided nothing is thereby added to the indictment and that the remaining allegations charge an offense." Wright & Miller, *Federal Practice & Procedure* § 127 at 275 (1969). All that happened here was that the government failed to prove the facts necessary to sustain its allegations on one theory, and the court therefore charged the jury only on the requisite elements of the second theory alleged in the indictment. The appellant has not been deprived of any rights by that process.

The appellant also argues that the trial judge erred in denying his "Motion to Compel Election of Offenses Charged in the Same Count (Duplicity)." He argues that the combination of the trial court's denying the motion to compel election and the later ruling that the allegation that the appellant was a bank director was surplusage gave

8. The second count charges:

> That on or about March 9, 1976, in the Western District of Texas, Defendant, Dan Sanchez, Jr., a director of the Citizens State Bank, Carrizo Springs, and Defendant Lewis Woodul, President of said bank, and Enrique M. Salinas, director of said bank, aided and abetted by each other, with intent to injure and defraud said bank, the deposits of which were insured by the Federal Deposit Insurance Corporation, did willfully and knowingly misapply and cause to be misapplied monies, funds and credits of said bank in the amount of $60,000 by causing that sum to be disbursed to Dan Sanchez, Jr., whereas, in truth and fact, the Defendants well knew that a portion of said loan was a loan to the said Enrique M. Salinas and was to be converted to the personal use of the said Enrique M. Salinas and that said Defendants also well knew at the time the said monies were used and disbursed that the loan was not well secured, and that the said Dan Sanchez, Jr., was not entitled to the credit of the bank, because no credit report on Dan Sanchez, Jr., had been obtained, and no verified financial statement of Dan Sanchez, Jr., was obtained in violation of Title 18, United States Code.
>
> The same essential charge is contained in count three of the indictment where it was alleged that there was a loan to Lewis Woodul, being president of the Citizens State Bank, which loan was actually to be applied and converted to the personal use of Enrique M. Salinas.

the government the option of electing which of the two offenses it was charging at the end of all the evidence. It also effectively required the appellant to defend against both the substantive offense of misappropriation and the offense of aiding and abetting, according to the appellant. Appellant's argument has some force. The indictment was duplicitous as to counts two and three—each count charged the appellant with both misapplying the funds as a principal and aiding and abetting others in the misapplication of funds—and the appellant's motion to compel election, filed before trial, was the proper means of objecting to being charged in the same count with two or more separate offenses. *United States v. Goodman,* 285 F.2d 378 (5th Cir. 1960), *cert. denied,* 366 U.S. 930, 81 S.Ct. 1651, 6 L.Ed.2d 389 (1961). Yet a duplicitous indictment and an erroneous denial of a motion to elect are not reversible error where defense preparation has not in fact been affected and the jury's verdict is unambiguous. Moore's Federal Practice § 8.04(2) at 8–16, 8–17 (citing *United States v. Gibson,* 310 F.2d 79 (2d Cir. 1962)). As was the case in *United States v. Gibson, supra,* the appellant has failed to make the necessary showing of prejudice here. In fact, the trial record suggests that the government never tried to demonstrate at trial that appellant was a director of the bank, and consequently the defendant never had to make a defense to this charge. The government elected to proceed on the aider and abetter theory from the beginning of the trial.[9] The jury's verdict was also unambiguous here. It was instructed only on the aider and abetter theory and could have convicted on no other basis.

### Sufficiency of the Evidence

The appellant was convicted under counts two and three of aiding and abetting Woodul and Sanchez in the misapplication of funds with respect to two $60,000 loans. The elaborate series of transactions involved had a simple motive: the appellant

was in need of funds to pay off the note he signed when he acquired the Citizens State Bank stock. When informed that the bank could not legally loan him money for the purchase of the bank's own stock, appellant arranged loans from the Citizens State Bank of $60,000 to Woodul and $60,000 to Sanchez. Using a United States bank on the Texas-Mexico border and a Mexican bank, appellant had the $120,000 paid to him. The appellant argues that Woodul and Sanchez had no intent to injure and defraud the bank and that without such intent there was insufficient evidence to convict the appellant of aiding and abetting in the misapplication of bank funds. The government argues that the appellant cannot avoid criminal liability by doing indirectly what he could not do directly. The government lists seven factors supporting the jury finding that Woodul and Sanchez had the requisite intent as principals: (1) Woodul and Sanchez were aware of the purpose for which the appellant was engineering the two $60,000 loans; (2) they knew that by using the circuitous series of transactions the appellant was avoiding the legal limitations on the amount that the bank could lend him; (3) they knew that the appellant was using the money for an illegal purpose; (4) they were aware that the bank had a serious cash shortage and that it could not easily lose $120,000 in cash at that time; (5) they knew that the state bank examiners had ordered the bank not to issue any more unsecured loans or inside loans; (6) they knew that the collateral for the two $60,000 loans was not free to be pledged and did not have a fair market value equal to the amount of the loans; and (7) they knew that the loans were issued under false pretenses since it was really the appellant who would be expected to repay the loans.

In *United States v. Welliver,* 601 F.2d 203, 208 (5th Cir. 1979), we stated that intent to defraud and injure under section 656 (misapplication statute) is proven by a

---

**9.** The opening statement by government counsel admitted that Salinas was not an officer or director of the bank.

"showing [of] an unlawful act voluntarily done, the natural tendency of which may have been to injure the bank." Further, it is well settled that intent can be proved under section 656 by a showing of reckless disregard for the interests of the bank. *United States v. Wilson*, 500 F.2d 715, 720 (5th Cir. 1974).

 In reviewing the sufficiency of the evidence, we must view all the evidence, direct and circumstantial, in the light most favorable to the verdict reached by the jury, accepting all reasonable inferences and credibility choices that tend to support that verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). *United States v. Cardona*, 650 F.2d 54, 57 (5th Cir. 1981). After reviewing the proof adduced at trial, we conclude that the evidence presented, when viewed in the light most favorable to the jury verdict, amply demonstrated that Woodul and Sanchez had the requisite intent to violate section 656 since they acted, at minimum, with *reckless disregard for the interests of the bank.* Given the precarious financial condition of the bank at the time when these transactions took place, Woodul and Sanchez must have known that their actions in helping appellant to draw $120,000 in cash from the bank quickly would have "a natural tendency to injure the bank." A reasonably minded jury could so conclude from Woodul's and Sanchez' contradictory testimony on the stand.

The appellant argues that because Woodul and Sanchez were both financially capable borrowers, there were really two per-fectly legal sets of loans at stake under the rule in *United States v. Gens*, 493 F.2d 216, 222 (1st Cir. 1974): one from the bank to the named debtors who would be looked to for repayment, the other from the named debtors to a third party (appellant). Yet even if this is to be the rule in this circuit as to *bona fide loans to qualified borrowers,*[10] *Gens* did not purport to sanction "sham or dummy loans," *i. e.,* to

> cases in which bank officials assured the named debtor, regardless of his financial capabilities, that they would look for repayment only to the third party who actually received the loan proceeds: in other words where the debtor allowed only his name to be used, enabling the bank officials to grant a *de facto* loan to a third party to whom the bank was unwilling to grant a formal loan . . . . [where] there was little likelihood or expectation that the named debtor would repay.

*Gens,* 493 F.2d at 222. Given the testimony at trial, the jury could reasonably have concluded that these were precisely the kinds of transactions involved in counts two and three, *i. e.,* sham loans to Woodul and Sanchez for which they would be the nominal borrowers but that they would not be expected to repay.[11]

 Finally, appellant argues that the loans in this case cannot constitute criminal misapplication because they were "authorized" by the bank's board of directors on March 9, 1976. As the government points out, however, the testimony on this issue is equivocal, and even that testimony does not reveal that the board of

---

10. We do not here purport to choose between the rule in *Gens* or that in *United States v. Twiford*, 600 F.2d 1339, 1341 (10th Cir. 1979).

11. Although their testimony at trial on this point was contradictory, both Woodul and Sanchez testified to this effect at certain points in the trial:

Q (to Woodul): Why didn't you question it?
A: Because Mr. Enrique Salinas, I felt, was a lot smarter than I was. He knew what he was doing. It was his bank, and I didn't really worry about it.
Q: You say it was his bank and you didn't really worry about repaying the loan?
A: No, sir.

Q: Okay. Why didn't you worry about repaying the loan?
A: Because I didn't feel it was my loan.
Q: Okay. Whose loan did you feel it was?
A: Well, I felt that it was for the purpose of the bank and that Mr. Enrique Salinas would take care of it.

. . . .

Q (to Sanchez): Mr. Sanchez, if you would, sir, who did you look to as far as who was going to be responsible for the repayment of the $60,000 loan?
A: Well, I felt that basically Mr. Salinas was going to take care of it for us.

directors was told of the true purpose of the loans. In any event, while valid consent by a bank's board of directors may be a defense to a charge of misapplication, no such board can validate a fraud on the bank. *United States v. Beran*, 546 F.2d 1316, 1321 (8th Cir. 1976). Thus, if the coconspirators in this case had an intent to defraud, "approval of the board of directors is no longer material to whether there was a misapplication of bank funds." *Id.* The jury in this case found such an intent; the fact that the board of directors may have reviewed the loan at some point does not absolve the coconspirators from culpability for misapplication of the bank's funds.[12]

### Juror Bias

Shortly after being selected to serve on the jury, one of the jurors called the trial judge requesting that she be excused. She told the judge that Salinas had walked by the store in which she was working, had seen and recognized her, and had returned soon thereafter with another person and pointed to her. The juror said that the incident left her apprehensive and a little worried and would impair her ability to reach an impartial decision. The judge told her to write him a letter setting forth her concerns; she did, but the letter was misfiled. The judge forgot the incident, and the juror was not questioned or the matter mentioned to the attorneys before trial. The letter was discovered after the jury returned its verdict, at which time the judge summoned the attorneys to explain the matter, and the juror was summoned for questioning. The questioning was extensive; pursuant to a request from appellant's counsel, the juror was recalled for further questioning.

In her answers, the juror stated that the judge's failure to ask her about the letter had surprised her; she said that she assumed he had decided that the events described in the letter would not impair her ability to reach an impartial decision. As a result she decided to "just start thinking another way and just be a fair and impartial juror, not think—just forget about the letter and everything and just go from there, because you had already made the decision because you didn't contact me." Consistent with this response, she said that she had no doubts about fairness and impartiality at the trial. Further, the juror stated that her verdict was not based in any way on anything that happened outside the courtroom. On re-examination the judge asked her: "Were you satisfied then that when you began the trial—that is, when I actually inquired of you if there was anything that had affected your ability to be a fair and impartial juror, had you decided then that you would and could be a fair and impartial juror?" She answered, "I can't say definitely yes," though she added that she was now satisfied as to her impartiality.

Appellant maintains that the juror's statement that she could not definitely say she was impartial when the trial began demonstrates that he was deprived of his sixth amendment right to be tried by a fair and impartial jury. He essentially argues that the trial judge could not properly exercise his discretion as to the impartiality of the juror on the basis of a post-trial examination and that in light of the juror's telephone call and letter, the judge's failure to conduct a pretrial examination of her constitutes reversible error.

Determinations as to the impartiality of a juror generally are committed to the discretion of the trial judge and will not be grounds for reversal absent an abuse of this discretion. *United States v. Martinez*, 604 F.2d 361, 364 (5th Cir. 1979). In this case, the district court held a thorough hearing on the matter and concluded, based on his observations of the juror and her statements in the course of the examination, that she had been fair and impartial and that a mistrial was not necessary. The district court's judgment in this respect is clearly supportable; it cannot reasonably be deemed an abuse of discretion.

---

12. Review by the board is a particularly dubious basis for exculpating the appellant in this case, since the evidence showed that appellant was the moving force behind the board of directors.

The juror reported that she believed she had been a fair and impartial juror at trial. Moreover, nearly three weeks had passed since the incident at the store, and the incident was in any event a rather innocuous one. The court could well have concluded that the passage of that period of time would likely have dampened the juror's apprehensions. In addition, the juror stated in her examination that she construed the court's failure to contact her or to question her prior to trial as a decision by the court that she was qualified to serve and that, based on that decision, she determined to "forget about the letter and everything" and to "just be a fair and impartial juror." Thus, although she had misapprehended the significance of the court's failure to question her, it was apparent that her impressions that the court had resolved the matter strengthened her determination to be fair and impartial as a juror. Based on these considerations, the district court reasonably concluded that the incident at the store did not deny appellant a fair and impartial trial.

Appellant cites no authority for the proposition that the failure to question the juror before a trial requires a reversal and remand. On the contrary, in *United States v. Johns*, 615 F.2d 672 (5th Cir. 1980), we declined to find erroneous a trial judge's post-trial questioning of a jury in a case where the foreman had been told that a witness had been killed.

### James Hearing

The appellant cites as error the trial judge's refusal to hold a *James* [13] hearing to determine admissibility of coconspirators' out-of-court statements. This argument is frivolous and for two reasons. First, appellant fails to point to a single out-of-court statement made by a coconspirator that was admitted into evidence. (The government could only find two such statements, and both of these lacked significance). In the absence of such a showing,

appellant's argument lacks merit. *See United States v. Fox*, 613 F.2d 99, 100–01 (5th Cir. 1980). Second, given the conviction of appellant, Woodul and Sanchez as coconspirators at their first trial, affirmed on appeal (*Salinas I*) and known to the trial judge, the trial judge had a reliable basis for determining the existence of a conspiracy independently of the out-of-court statements. So long as the showing of a conspiracy and the defendant's connection with it is made prior to the introduction of the coconspirators' declarations, the *James* requirements are satisfied. *United States v. James*, 590 F.2d at 582.

For the foregoing reasons, the judgment of the district court is reversed on count one and affirmed on counts two and three.

AFFIRMED IN PART; REVERSED IN PART and REMANDED.

---

**13.** *United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).