UNITED STATES of America,

v.

Gordon L. RUSH, Jr., et al.

Crim. A. No. 92–218.

United States District Court,
E.D. Louisiana.

Dec. 10, 1992.

---

Robert J. Boitmann, Asst. U.S. Atty., New Orleans, LA, for U.S.

Michael C. Garret, Trial Atty., Augusta, GA, Pro Hac Vice, Archie C. Tatford, Jr., New Orleans, LA, for McDermot.

Timothy D. Valenti, Trial Atty., New Orleans, LA, Julian Murray, Trial Atty., Metairie, LA, for Rush.

James H. Banks, Trial Atty., Columbus, OH, Pro Hac Vice, Terry P. Pugh, Dublin, OH, Pro Hac Vice, for Kochensparger.

## ORDER AND REASONS

ARCENEAUX, District Judge.

Defendant Gordon L. Rush, Jr. asks the court to dismiss the superseding indictment, or in the alternative, to sever two charges as duplicitous. Defendant further asks the court to strike surplusage in the superseding indictment. The court, after considering the memoranda in support and opposition, the record, and the applicable law, rules as follows.

### Dismissal

■ Defendant asks the court to dismiss the superseding indictment, or in the alternative, to strike duplicitous material. Defendant argues that Count 1 alleges two separate offenses, one involving defendant Gordon Rush's $1.4 million loan and the other involving the Federal National Mortgage Association (FNMA) certificates with which the government alleges that both Mr. Rush and defendant Peter McDermot were involved. Defendant Rush objects to the way in which the government arranges the narrative portion of the indictment.[1]

In response, the government argues that Mr. Rush conceived and carried out a single scheme to defraud during which he conspired with Mr. McDermot. Because it charges each act in a separate count, the government argues that the indictment is not duplicitous.

■ Duplicity is the charging of separate offenses in a single count. J. Moore, *Moore's Federal Practice* 2d ed. 1992, § 8.03[2]. The United States Court of Appeals for the Fifth Circuit has held that the trial court's failure to strike duplicity in the indictment was not reversible error because the defense preparation was not in fact affected and the jury's verdict was unambiguous. *United States v. Salinas*, 654 F.2d 319, 326 (5th Cir. Unit A, 1981) (overruled on other grounds).

The government, through a lengthy narrative in the superseding indictment, charges defendants Rush and McDermot within its heading, "Counts 1–15." It verbosely and in a picturesque fashion describes the alleged scheme ("the scheme") from January 1, 1985, to November 12, 1992, in which Rush is claimed to have defrauded the Louisiana Insurance Guaranty Association (LIGA); Touche Ross & Company; citizens of the states of Louisiana, Mississippi, and Texas; and clients and policyholders of Presidential Fire & Casualty Company (Presidential). The narrative recites that Rush obtained a $1.4 million loan from Investors Bank & Trust

---

1. The court notes that Mr. Rush's motion challenges Count 1 as being duplicitous. However, Count 1 charges only defendant Rush with fraudulently mailing to the Louisiana Insurance Commissioner on March 1, 1989, the 1988 financial statement of Presidential.

Company which he used to obtain a Certificate of Deposit for the same amount. The government then alleges that he fraudulently structured the transactions to make it appear that Rush's company, Presidential, owned the CD clear of debt. The government narrative further alleges that defendant Rush and a co-conspirator not indicted in this action, used a series of sham transactions to commit fraud.

After setting forth this scheme, the government narrative account further claims that in April, 1991, defendant McDermot joined the scheme, that Mr. McDermot fraudulently represented that Rush's company (Presidential) obtained about $9 million in FNMA and municipal bonds and that Rush illegally funnelled money to McDermot from Presidential and other companies owned by Rush.

The government squanders three and a half pages (about one-fourth of the total paper consumed by the indictment) reciting in narrative form its version of the scheme to defraud. In this narrative, the government lumps together the alleged offenses of Rush and McDermot yet clearly charges each criminal act in a separate count of the indictment. The government creates difficulty when it seeks to recast the traditional form of indictment from a vehicle for stating the offense into a vehicle for arguing its case. The indictment will be read to the jury at trial and will be available for study (and presumably studied) by the jury during deliberation. Thus, the jury will carry into the jury room the government's version of the case—in effect, the government's written oral argument in support of the alleged individual criminal acts. Pretermitting that a defendant does not have the same opportunity, it would seem such arguments are more properly left for trial.

The court notes with concern that such narratives have become common practice and apparently have not been discouraged by the appellate courts. This court, however, articulates its concern about such narratives because they can, on occasion, confuse the jury and provide the government an unfair advantage during jury delibera-

tions. Absent some claim of prejudice by virtue of the narrative form of this indictment, and absent any substantive guidance to which its attention is addressed, the court simply notes these observations in passing, but does not deal directly with the concerns they present.

However, as to the specific claim of defendant Rush, the court is unable to find that the narrative is duplicative. Accordingly, the motion to dismiss the indictment and in the alternative to strike material as duplicitous is DENIED.

*Surplusage*

■ The government alleges in its indictment that the State of Louisiana will lose in excess of $10 million dollars because of the crimes with which it charges defendants.

Defendant Rush argues that this figure is arbitrary, that it prejudices him, and that the amount is not an element of the crime with which he is charged. Defendant points out that some assets of Presidential Insurance Company [2] have not been sold, thus preventing a reliable projection of Louisiana's financial loss.

The government responds that the figure puts defendant on notice that it intends to prove such losses, thus allowing him to defend the allegation. The government further avers that an expert witness' review of the records supports the claim and that the figure was carefully calculated and that the dollar amount is relevant because defendant Rush is charged with fraud.

Rule 7(d) of the Federal Rules of Criminal Procedure permits the court to strike surplusage from the indictment on motion of defendant.

■ The proper remedy for unnecessary or prejudicial allegations in an indictment is by motion to strike surplusage. *Dranow v. United States*, 307 F.2d 545, 558 (8th Cir. 1962). That remedy protects a defendant against prejudicial or inflammatory allegations that are neither irrelevant or immate-

2. The indictment alleges that Presidential is one of the business entities created by Mr. Rush. Presidential is in liquidation, but some of its assets have not yet been sold.

rial. *United States v. Ramirez,* 710 F.2d 535, 545 (9th Cir.1983).

The government alleges that the State of Louisiana lost $10 million because of the defendant's activities. The government is free to prove during trial specific monetary harm, but such allegation is not necessary in the indictment, and, in fact, its inclusion could prejudice the defendant.

While that number may at some time during trial become relevant evidence, it has no place in the indictment. Indeed, its presence simply is further evidence of the dangers inherent in the government pleading and presenting arguments on so called "narrative accounts."

Defendant's motion to strike surplusage is GRANTED, and the statement in the superseding indictment alleging $10 million in losses by the State of Louisiana is STRICKEN.

IT IS SO ORDERED.