Vincent B. CAISE, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

Dec. 16, 1980.

Jack E. Farley, Public Advocate, Sara L. Collins, Asst. Public Advocate, Frankfort, for appellant.

Steven L. Beshear, Atty. Gen., Penny R. Warren, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

The Grand Jury of Fayette County, Kentucky, on December 17, 1979, returned an indictment against appellant for the offenses of robbery in the first degree, a Class B felony (KRS 515.020); kidnapping, a Class B felony (KRS 509.040); and for being a persistent felony offender (KRS 532.-080). On a jury trial on January 28, 1980, appellant was found guilty on all counts. His punishment for the robbery and kidnapping charges was fixed at 20 years' imprisonment each. On the persistent felony offender charge his punishment was enhanced to 25 years' imprisonment for each offense. All sentences are to run concurrently. This is a direct appeal from the judgment of the Fayette Circuit Court. We affirm.

The Payless Shoe Store, in Lexington, Kentucky, was robbed by appellant on October 10, 1979, between 1:15 and 1:30 p. m. Appellant had entered the store and made inquiry for some tennis shoes. While in the process of securing shoes for appellant to try on, the salesman, C. F. Evans, III,

turned his back to appellant, and when he had the shoes to show, turned and faced appellant and a .32–caliber nickel–plated revolver with green handles and loaded with hollow pointed bullets. Appellant assured Evans that the gun was real, that he was not playing games, and he demanded all of the money in the store. After securing the money, appellant forced Evans, at gunpoint, to drive him around Lexington for about 45 minutes to an hour in Evans' car. At Race Avenue and Aspendale Road the appellant caused Evans to stop the car so that he could get out. As appellant stepped his foot out of the car, Evans said, "I just gunned it and floored it and took off." Evans described the robber as follows: an unmasked black male, about 6' 2" or 6' 3" tall, weighing about 170 pounds, approximately 25 years old, with a three or four–day growth of beard. He was wearing an Army fatigue jacket, blue jeans, and old tan vinyl tennis shoes which had a round design that flared back to the heel.

The arrest of appellant came about in this manner: Phillip H. Clay, who had been an arresting officer in the Lexington Police Department for seven years, was sitting in his parked car at the Convenient Food Mart lot in the Winburne Subdivision. As appellant walked by, he casually spoke to Officer Clay, who thought that he recognized the appellant as being wanted for robbery. Officer Clay called for backup robbery units. As the car in which appellant was a passenger started to leave, Officer Clay forced it to stop on Winburne Drive. He approached appellant from the passenger side of the car and asked him for identification, and was told that he had none. Appellant was then ordered to get out of the car, which he did. However, appellant commanded the officer to either charge him with an offense or he was leaving. The officer did not permit appellant to leave. The two backup units arrived and a positive identification was made; whereupon, appellant was arrested, searched, and a Kentucky automobile driver's license bearing appellant's name and picture was recovered from his person. Appellant had an alibi defense and denied committing the offenses. He attempted to show that at the time of the robbery he was in attendance at the Central Kentucky Vocational School; consequently, he could not have committed the crimes charged to him.

The owner–driver of the car in which appellant had been riding advised the officers that appellant had some clothing in the trunk of his car, and he requested that the officers remove the clothing. The officers requested, and were granted permission by the owner of the car, to search the inside of the car. It was searched and the subject duffel bag and suitcase were removed from it. Appellant, the duffel bag, and the suitcase were then taken to police headquarters where appellant was booked and his personal property marked by Officer John Thurston and stored for trial use. The top flaps of the bag were open revealing a tennis shoe which had the appearance of being similar to the shoes worn by appellant during the robbery. On January 24, 1980, a warrant was secured for a search of the duffel bag which disclosed, among other things, a pair of tennis shoes which were identified as being the ones actually worn by appellant at the time of the robbery.

"I. Appellant was substantially prejudiced and denied a fair trial by the improper introduction of evidence obtained pursuant to an invalid search warrant issued on the basis of an affidavit supported by information obtained in a prior illegal warrantless search."

To support this issue, appellant must show both (1) an illegal warrantless search and (2) a search warrant issued on information secured by the illegal warrantless search. Irrespective of the phraseology used to describe this issue, the tap root is whether appellant at the time of his arrest was subjected to an illegal warrantless search.

In this action the arresting officer knew that a warrant was out for the arrest of appellant for the offense of robbery by the use of a deadly weapon. Appellant made an attempt to escape on foot from the officer while awaiting the arrival of the two police backup units. At the request of the

owner of the car in which appellant had been a passenger, the officer removed appellant's duffel bag and suitcase. This type of duffel bag is constructed in such a manner that it can secure the contents from spilling out; however, it was not fastened when taken from the car. It was brought to police headquarters at the same time the appellant was brought in for booking. The bag was taken to the storage room to await use on appellant's trial. The flaps were open and the receiving officer saw a tennis shoe protruding. He made the bag secure and marked it for identification for its use on the trial.

Be it remembered that the robbery took place on October 10, 1979, the arrest and storage of the bag was on November 13, 1979, and the search warrant was issued on January 24, 1980. Officer Thurston, the receiving officer, was in the hospital from November 16, 1979, to January 3, 1980. Pursuant to the authority of the search warrant, the duffel bag was searched and a pair of tennis shoes were removed from it. At the time of appellant's arrest a shoe was protruding from the bag. Its visibility did not result from any purposeful police misconduct. The police are not required to be blind to that which fate casts into plain view. Consequently, the affidavit to support the issuance of the search warrant was adequate and the fruits of the search can properly be used on the trial. However, the circuitous association of appellant with the commission of the robbery fades into oblivion since there was an in-court, unchallenged identification of appellant by Evans, the victim of appellant's folly.

"II. The trial court erred to appellant's substantial prejudice by overruling appellant's motion for a separate jury at the persistent felony offender hearing."

■ Appellant's argument that he was entitled to a separate jury at the persistent felony offender hearing is not well taken. KRS 532.080(1) provides that the trial on a persistent felony offender charge "* * * shall be conducted before the court sitting with the jury that found the defendant guilty of his most recent offense unless the

court for good cause discharges that jury and impanels a new jury for that purpose." No good cause was shown for the court to deviate from the statute.

"III. The trial court erred to appellant's substantial prejudice and denied him due process of law by failing to conduct an inquiry into whether appellant's admission of a prior felony conviction was entered voluntarily, knowingly, and intelligently."

■ Appellant took the stand and testified at length. On cross-examination he was asked about two felony convictions in the Fayette Circuit Court. No objections to the questions were made by appellant. The trial judge did, however, admonish the jury that such testimony was not to be considered by it to any degree as evidence of guilt but only insofar as it may have a bearing, if it does so, upon his truthfulness as a witness. No objection having been made to the question and no request having been made for a hearing in chambers, the trial court was not under any obligation to voluntarily, and of its own volition, conduct a *Boykin* hearing. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

"IV. The trial court erred to appellant's substantial prejudice and denied his right to a fair trial by permitting the prosecutor to make improper and prejudicial comments during both the guilt phase and the PFO closing arguments."

■ Appellant calls our attention to three statements made by the Commonwealth's Attorney which appellant charges to have been so improper and prejudicial as to deny him a fair trial. The first and second statements of which appellant complains were made by the Commonwealth's Attorney without objection from anyone. The third statement made by the Commonwealth's Attorney is simply telling the jury what a person can look forward to if he commits a robbery in Fayette County. We do not find this argument to be offensive. *Lynem v. Commonwealth*, Ky., 565 S.W.2d

141 (1978); *Hamilton v. Commonwealth,* Ky., 401 S.W.2d 80 (1966).

The judgment is affirmed.

All concur.