RENDERED: JUNE 25, 2009
TO BE PUBLISHED

**Supreme Court of Kentucky**

2007-SC-000218-MR

BRENT CANTRELL                              APPELLANT

V.

ON APPEAL FROM JOHNSON CIRCUIT COURT
HONORABLE JOHN DAVID PRESTON, JUDGE
NO. 06-CR-00019

COMMONWEALTH OF KENTUCKY               APPELLEE

**OPINION OF THE COURT BY JUSTICE CUNNINGHAM**

**<u>AFFIRMING</u>**

### I. Introduction

On the morning of January 27, 2006, the Johnson County Sheriff's Department received a tip that a methamphetamine lab was in operation in a trailer located on property owned by Brent Cantrell's father. Three members of the Johnson County Sheriff's Department proceeded to the location in three separate cruisers.

When Deputy Tom Wyatt drove up to the trailer, he noticed Brent Cantrell and Shawna Dalton climbing out an open window and running away. Although it was late in January, Cantrell was wearing only a t-shirt, jeans, and shoes. Dalton was wearing a t-shirt and jeans, but no shoes. Deputy Barry Mayes also observed Cantrell and Dalton climbing out the window and running

away. Officer Mayes ordered the pair to stop and they were apprehended. The officers detected the odor of ammonia on both Cantrell and Dalton.

Cantrell gave the officers permission to search the trailer. A strong caustic odor permeated the air around the residence. Upon entry, the officers encountered a foggy haze and more of the strong caustic odor which had been detected outside. In fact, one of the officers began coughing so much because of the fumes that he had to be treated at a local hospital. Inside the trailer, the officers discovered all the chemicals and equipment necessary for the manufacturing of methamphetamine. An individual by the name of Dale Wells was found passed out on a bunk in a back bedroom. A video surveillance system was also discovered inside the trailer, with the camera focused on the driveway leading up to the residence.

Deputy Boyce Williams collected and photographed evidence from the trailer. Among the evidence collected were cans of butane fuel, a butane torch, ph strips, tubing, kitty litter, a coffee pot, coffee filters, a funnel, a beaker, a mason jar, and hollowed-out light bulbs. Two hollowed-out light bulbs containing residue and three bottles were sent to the Kentucky State Police Laboratory for testing. Lab results showed that these items contained methamphetamine.

Cantrell was convicted in the Johnson Circuit Court of: complicity to manufacture methamphetamine;[1] complicity to possession of a controlled

---

[1] Kentucky Revised Statute (KRS) 218A.1432, KRS 502.020

substance in the first degree (methamphetamine);[2] complicity to use/possession of drug paraphernalia;[3] and being a second-degree persistent felony offender.[4] As a result of his conviction for being a persistent felony offender, Cantrell's 20-year sentence for manufacturing methamphetamine was enhanced to 50 years, and his 5-year sentence for possession of a controlled substance was enhanced to 10 years. Cantrell received a 12-month sentence on the drug paraphernalia charge. In accordance with the jury's recommendation, Cantrell was sentenced to a total of fifty (50) years in prison.

## II. Discussion

Appealing to this Court as a matter of right,[5] Cantrell raises numerous issues. His first three arguments deal with the sufficiency of evidence as to the counts of manufacturing methamphetamine, possession of a controlled substance, and possession of drug paraphernalia. Next, Cantrell claims the trial court erred in denying his motion for a directed verdict as to the persistent felony offender count. Cantrell also argues the trial court erred in allowing the Commonwealth to introduce evidence of his girlfriend's drug use. Further, Cantrell argues the court abused its discretion when it failed to grant a continuance on the second day of trial. Finally, he argues the court committed reversible error when it overruled his objection to a portion of the

---

[2] KRS 218A.1415, KRS 502.020
[3] KRS 218A.500, KRS 502.020
[4] KRS 532.080
[5] Kentucky Constitution §110(2)(b).

Commonwealth's closing argument during the penalty phase. Each argument will be addressed in turn.

### A. Sufficient evidence existed to convict Cantrell of manufacturing methamphetamine, possession of a controlled substance, and possession of drug paraphernalia.

Cantrell argues there was insufficient evidence to convict him of manufacturing methamphetamine, possession of a controlled substance, and possession of drug paraphernalia. At trial, Cantrell did not contest the existence of the methamphetamine lab in the trailer, methamphetamine on the scene, or the recovery of drug paraphernalia from the trailer, but rather claimed that his estranged wife, Mary, was the owner of everything in the trailer.

A person is guilty of manufacturing methamphetamine when he knowingly and unlawfully manufactures methamphetamine or with intent to manufacture methamphetamine possesses two (2) or more chemicals or two (2) or more items of equipment for the manufacture of methamphetamine. See KRS 218A.1432(1).

A person is guilty of possession of a controlled substance in the first degree when he knowingly and unlawfully possesses a controlled substance that contains any quantity of methamphetamine. See KRS 218A.1415(1).

A person is guilty of possession of drug paraphernalia when he is found in possession of any

> equipment, products and materials of any kind which are used, intended for use, or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing,

processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this chapter.

See KRS 218A.500(1).

The Commonwealth introduced evidence of numerous items recovered from the trailer. This included two hollowed-out light bulbs containing residue and three bottles containing sediment or residue. Lab tests conducted on the residue or sediment in each of these five items confirmed the presence of methamphetamine. Further, officers testified that, from their experience, light bulbs converted in this fashion are used for ingesting methamphetamine.

Unable to challenge the above evidence, Cantrell relies instead on his claim that the Commonwealth failed to connect him to the trailer. Therefore, the question before us is whether the Commonwealth introduced any evidence establishing Cantrell's connection to the trailer.

The Commonwealth introduced evidence that Cantrell was climbing out a window of the trailer and attempting to flee when officers arrived on the scene. See Rodriguez v. Commonwealth, wherein this Court recognized that "proof of flight to elude capture or to prevent discovery is admissible because 'flight is always some evidence of a sense of guilt.'" 107 S.W.3d 215, 218-19 (Ky. 2003) (citations omitted). Officers also noted how Cantrell and Dalton were unseasonably dressed when they were apprehended. In addition, officers testified that there was the presence of a strong odor of ammonia on the clothes of both Cantrell and Dalton. Cantrell led the officers to believe the trailer was his home. The written consent form Cantrell signed allowing

officers to search the trailer clearly indicated Cantrell was giving them consent to search "the home of Brent Cantrell." Cantrell's black truck was parked in front of the residence. Finally, we note that after the charges were brought, Cantrell presented the trial court with a motion to suppress evidence seized from "his home" in violation of his constitutional rights. Before leaving this issue, we also note that Cantrell was indicted on each of these three offenses as having acted in complicity with Shawna Dalton and Dale Wells. As this Court has held: "Complicity liability requires (1) proof of commission of an offense by another person and (2) proof of the defendant's participation in commission of that offense." Parks v. Commonwealth, 192 S.W.3d 318, 327 (Ky. 2006) (citation omitted). When the evidence presented is taken as true and viewed in a light most favorable to the Commonwealth, we cannot say it was clearly unreasonable for the jury to find guilt. Thus, we conclude sufficient evidence existed to convict Cantrell on each of the three offenses, and we reject his claim that the trial court erred in denying his motion for a directed verdict as to each of the three counts.

**B.  The trial court did not err in denying Cantrell's motion for a directed verdict on the count charging him with being a persistent felony offender in the second degree.**

Cantrell argues the Commonwealth failed to establish all the elements of the count charging him with being a persistent felony offender in the second degree. In particular, Cantrell points out that the Commonwealth failed to introduce any evidence as to his age at the time the prior felony was committed. As with any count of an indictment, the Commonwealth has the burden of proving every element beyond a reasonable doubt. See Adams v.

6

Commonwealth, 551 S.W.2d 561, 564 (Ky. 1977); KRS 500.070. In order to establish the count for being a persistent felony offender in the second degree, the Commonwealth must show Cantrell was over the age of eighteen (18) years at the time the first offense was committed, and that he was more than twenty-one (21) years of age when he was convicted of the current offenses. See KRS 532.080(2).

In this case, the Commonwealth relied on the testimony of Cantrell's father in order to establish his date of birth. During T.C. Cantrell's testimony, he indicated Brent Cantrell was born in 1976. Since Cantrell was convicted of the present charges in 2007, the evidence is clear that he was at least 29 years of age at the time of the conviction. Likewise, we find no error in the evidence relied on by the Commonwealth for allowing the jury to infer Cantrell was over eighteen (18) years of age when he committed the first offense. During the penalty phase, the Commonwealth introduced Cantrell's prior conviction. No further evidence was introduced during the PFO phase of the trial. The Commonwealth points out that, based on the prior conviction and the testimony of Cantrell's father, the jury had evidence that: (1) Cantrell was born in 1976; (2) his prior offense was for possession of a controlled substance; (3) the indictment was returned in 2003 (when Cantrell was 26 or 27 years old); and (4) at the time Cantrell received a one-year sentence after pleading guilty in 2004 (when he was 27 or 28 years old), he had been in custody for 124 days.

Based on this evidence, the Commonwealth argues the jury could infer Cantrell's first offense occurred when he was well past the age of eighteen (18)

7

years. We agree. See Kendricks v. Commonwealth, 557 S.W.2d 417, 419-20 (Ky. 1977) ("[I]f he had been 18 at the time he committed the first offense, it is unlikely that any court would wait six years to try a person charged with a criminal offense." (jury inferring defendant was over eighteen (18) years of age at the time of his conviction since he pled guilty when he was twenty-four (24) years of age)). "An inference is the act performed by the jury of inferring or reaching a conclusion from facts or premises in a logical manner so as to reach a conclusion." Martin v. Commonwealth, 13 S.W.3d 232, 235 (Ky. 1999). This Court, in Martin, went on to say:

> A reasonable inference is one in accordance with reason or sound thinking and within the bounds of common sense without regard to extremes or excess. It is a process of reasoning by which a proposition is deduced as a logical consequence from other facts already proven. Guesswork, on the other hand, is the process of making a judgment without adequate information, or to conjecture, or to speculate.

Id.

Finding the evidence before the jury sufficient to support the jury's inference that Cantrell was more then twenty-one (21) years old at the time he was convicted of the present charges, and that Cantrell was more then eighteen (18) years old when he committed the first offense, we find no error in the trial court's denial of Cantrell's motion for a directed verdict as to the persistent felony offender in the second degree count.

**C. The trial court did not commit reversible error when it allowed the Commonwealth to cross-examine Cantrell's girlfriend concerning her prior drug use.**

8

In order to establish his claim that he no longer lived in the trailer on his father's property, Cantrell presented testimony from his girlfriend, Melissa Stapleton. During Stapleton's direct examination, she appeared confused and offered inconsistent testimony. Initially, Stapleton indicated Cantrell had not stayed with her the on night of January 26th. She later claimed Cantrell had stayed that night, and that he had left for work on the morning of the 27th. On cross-examination, the Commonwealth explored the reason for Stapleton's inability to recall or relate what had occurred on the night of January 26th and the morning of January 27th. The Commonwealth got Stapleton to admit that she "sometimes" had difficulties recollecting; that in the past she had a methamphetamine problem; and that her prior drug use "probably has not helped [her ability to recollect what had occurred]." Cantrell now claims that allowing this evidence through cross-examination amounts to reversible error. This alleged error was not preserved at trial. Therefore, we must look at it under the palpable error standard.

Given the totality of the evidence presented by both sides, we find no error in allowing the Commonwealth to explore an explanation for Stapleton's confused and inconsistent testimony, and certainly any error which may have occurred was not palpable. This issue was addressed by the Seventh Circuit Court of Appeals in United States v. Mojica, 185 F.3d 780 (7th Cir. 1999). In that case, the court stated: "Evidence of a witness' prior drug use may be admitted insofar as it relates to his possible inability to recollect and relate." Id. at 788 (citation omitted). Considering the admissibility of such evidence

9

under Kentucky Rule of Evidence (KRE) 608, Robert G. Lawson concludes evidence of prior drug use "is admissible to cast doubt on [the witness'] capacity to perceive" as well as the witness' "ability to remember or relate[.]" Kentucky Evidence Law Handbook, § 4.30(1) (4th ed. 2003). We, therefore, affirm on this issue.

> **D. If the trial court erred in denying a continuance to allow Cantrell time to arrive on the second day of trial, we conclude such error was harmless beyond a reasonable doubt.**

Cantrell argues the trial court abused its discretion and committed reversible error when it denied his motion for a continuance. At the start of the second day of trial, Cantrell's attorney informed the court that Cantrell was experiencing problems with his vehicle and would be late arriving at the courthouse. The court, after Cantrell's counsel was unable to provide further details, denied the motion for a continuance and allowed the Commonwealth to continue with its case. The Commonwealth then called one of the three officers who initially arrived on the scene. A couple of minutes after the officer's testimony began, Cantrell entered the courtroom. Cantrell now contends the court violated both his right to due process and his right to confront witnesses against him.

The Kentucky Rules of Criminal Procedure state that a defendant shall be present at every critical stage of the trial. See RCr 8.28. In determining whether a stage is critical, "[t]he appropriate question is whether there has been any interference with the defendant's opportunity for effective cross-examination." See Kentucky v. Stincer, 482 U.S. 730, 744 n.17 (1987). The

10

U.S. Supreme Court has indicated that not all constitutional errors automatically call for a reversal. See Chapman v. California, 386 U.S. 18, 23 (1967). The Court recognized that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Id. at 24.

Cantrell's absence occurred at the commencement of the second day of trial. He arrived within a couple of minutes of the start of the officer's testimony. Cantrell does not contest the Commonwealth's assertion that during that time the officer testified as to his current and past employment, the fact that he was involved in the investigation, and a description of what he encountered when he initially arrived at the trailer. Nor has Cantrell made any attempt to demonstrate how he was prejudiced by his absence of only a couple of minutes. In light of these circumstances, we conclude the error was harmless beyond a reasonable doubt.

### E. The trial court did not err in allowing the Commonwealth, over Cantrell's objection, to make a deterrence argument during closing arguments of the penalty phase.

Cantrell notes that the Commonwealth, over his objection, was allowed to make a "send a message" argument during closing. Cantrell contends this argument was improper and highly prejudicial in the penalty phase. The Commonwealth stated:

> This is the first case on manufacturing methamphetamine ever heard in Johnson County. You have seen commercials, you have seen the advertisements, you know . . . [interrupted by Cantrell's objection] . . . you know what meth does to communities. You have seen those that are dead,

11

those that are dying. Now is the time for you to speak with one voice and tell people like Mr. Cantrell, who is bringing poison into our community, we don't want you. We don't want you near us. I am going to ask that you go out and bring back a maximum sentence in this matter . . . .

We take this opportunity to review and clarify this Court's position regarding closing arguments by the Commonwealth at the penalty phase, commonly referred to as "send a message."

"The true purpose of punishing one for a violation of the laws against crime is not for the benefit of the person injuried, but to protect the public and with the view of preventing further crime." Weber v. Commonwealth, 303 Ky. 56, 67, 196 S.W.2d 465, 471 (1946). Our U.S. Supreme Court has recognized deterrence as one of four factors to be considered in imposing a sentence. Kennedy v. Louisiana, ____ U.S. ____, 128 S.Ct. 2641, 2649 (2008). See also Williams v. People of State of N.Y., 337 U.S. 241 (1949); Taggart v. State, 957 So.2d 981 (Miss. 2007); State v. Thornton, 800 A.2d 1016 (R.I. 2002); Commonwealth v. McIntyre, 767 N.E.2d 578 (Mass. 2002); State v. Gertsch, 49 P.3d 392 (Idaho 2002); and State v. Abraham, 566 P.2d 267 (Alaska 1977).[6]

The sentencing guidelines set down for federal courts list factors to be considered in imposing a sentence. These factors include the need for the sentence imposed to "promote respect for the law" and "afford adequate deterrence to criminal conduct." 18 U.S.C.A. § 3553(2)(A)(B).

---

[6] Appellant relies extensively in his brief on the case of United States v. Solivan, 937 F.2d 1146 (6th Cir. 1991). This decision, as well as all other federal cases, offers little assistance in our determination. Juries in federal courts decide guilt or innocence only, and the penalty is solely set by judges.

Other states have considered and allowed these types of "send a message" statements to be heard by the jury. See King v. State, 784 So.2d 884 (Miss. 2001); State v. Fletcher, 555 S.E.2d 534 (N.C. 2001); Walker v. State, 327 S.E.2d 475 (Ga. 1985); State v. Richards, 896 P.2d 357 (Idaho App. 1995); People v. Lego, 507 N.E.2d 800 (Ill. 1987); State v. Giorgi, 397 A.2d 898 (R.I. 1979).

Even before "truth in sentencing" legislation, which bifurcated Kentucky's criminal prosecutions of felonies, this Court has never adopted a "blanket condemnation of prosecutorial comment relating to deterrence." Wallen v. Commonwealth, 657 S.W.2d 232, 234 (Ky. 1983). Prior to the enactment of KRS 532.080 in July of 1986, the jury considered guilt or innocence, as well as the penalty, in one deliberation. We look back over almost a century of cases where comment on the deterrent effect of a sentence has been held proper. These include pre-1986 cases where guilt and penalty were decided by the jury during the same deliberation. See Damron v. Commonwealth, 687 S.W.2d 138, 140 (Ky. 1985) (approving an argument by the Commonwealth asking the jury to severely punish the defendant in order to send a message to the jails and prisons as to the consequences of escape, thereby deterring future escapes); Caise v. Commonwealth, 610 S.W.2d 605, 607 (Ky. 1980) (did not constitute error for prosecutor to comment during closing argument about what person can look forward to by committing robbery in Fayette County); Carter v. Commonwealth, 278 Ky. 14, 128 S.W.2d 214, 218 (1939) (reversal not required because of statements of county

13

attorney, in closing argument in murder prosecution, to effect that if jury acquitted defendant it would be useless to try anyone for any crime in county, that defendant's good reputation had no bearing on case, and that jury could not release defendant without paying more attention to mob law than to the law and evidence); Wallen, 657 S.W.2d at 234 (remark of prosecutor in closing argument that one way to stop useless killings was for everyone to do their jobs and see that defendant paid penalty for what he had done was within bounds of propriety as prosecutorial comment related to deterrence); Sarver v. Commonwealth, 425 S.W.2d 565, 566 (Ky. 1968) (It was within the scope of proper argument and did not require admonition to jury for prosecutor to state in closing argument: "As you sleep there is little to protect your property except the law which is the jury and these good officers whose only interest is in protecting your property. They have done their part. It is now up to you."); Shepherd v. Commonwealth, 236 Ky. 290, 33 S.W.2d 4, 6 (1930) (In homicide prosecution, prosecutor's argument to "convict this man and Butler County will go off the head lines" was held neither improper nor prejudicial.); Williams v. Commonwealth, 153 Ky. 710, 156 S.W. 372, 375 (1913) (While accused's guilt or innocence must be determined from the facts of the case, and he cannot be affected by the prevalence of crime, it is within the limits of legitimate argument to insist upon the jury doing its duty for the purpose of preventing bloodshed and crime.). These cases illustrate that so long as the jury is well aware that it is sentencing the particular defendant before it – with his or her good points and bad – on the crime for which he or she has been convicted,

14

there is no prejudice in the prosecutor commenting on the deterrent effect of that sentence.

In Young v. Commonwealth, 25 S.W.3d 66 (Ky. 2000), a post "truth in sentencing law" case very similar to this one, we held defendant suffered no "manifest injustice" as the result of prosecution's sentencing phase closing argument during which he asked the jury to send a message to the methamphetamine dealers in Muhlenberg County. We noted that the prosecutor's statements were "responsive to defense counsel's contention that the jury should recommend the minimum sentence," and that the "full text of the Commonwealth's sentencing phase closing argument clarified the 'send a message to drug dealers' rhetoric and made it clear that the Commonwealth wanted the jury to know that [defendant's] methamphetamine manufacturing placed him in the drug trafficking stream of commerce." Id. at 75. While Young deals with palpable error, rather than preserved error, it is essentially illogical, at the sentencing phase, to say that the prosecutor cannot encourage the jury to impose a sentence that speaks to deterrence, as well as punishes the specific crime before it. Deterrence is clearly not intended for that defendant alone, but rather his sentence sends the message to all others so inclined that their crimes will be punished, and that a jury made up of local citizens will not tolerate such offenses. This is a significant part of the benefit of public trials. We continue, however, to disapprove of this argument at the guilt stage. And even at the penalty phase, the "send a message" argument shall be channeled down the narrow avenue of deterrence. Any effort by the

15

prosecutor in his closing argument to shame jurors or attempt to put community pressure on jurors' decisions is strictly prohibited. Prosecutors may not argue that a lighter sentence will "send a message" to the community which will hold the jurors accountable or in a bad light. The penalty argument in this case directed at the potential meth pushers in Johnson County was not error.

**F. The trial court did not err in allowing introduction of misdemeanor convictions in same proceeding as PFO phase.**

KRS 532.055 provides for bifurcated criminal trials for felony trials. It specifically states that the penalty and persistent felony determination shall be combined into the same procedure. KRS 532.055(3). There was nothing improper in this case for the jury to hear evidence of the felonies before imposing the punishment for the misdemeanor. "[T]he same evidence that is pertinent toward fixing the penalty is also pertinent for consideration in the enhancement of sentence . . . ." Commonwealth v. Reneer, 734 S.W.2d 794, 798 (Ky. 1987). The case cited by Appellant, Commonwealth v. Philpott, 75 S.W.3d 209 (Ky. 2002), is not controlling. That case prohibited the setting of penalty on a lesser included misdemeanor during the deliberation on guilt or innocence. Id. at 213. The unpreserved claim of error here is without merit.

For all of the foregoing reasons, we affirm the judgment of the Johnson Circuit Court.

All sitting. All concur.

16

COUNSEL FOR APPELLANT:

Shannon Renee Dupree
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 301
Frankfort, KY 40601


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

Jeffrey Allan Cross
Criminal Appellate Division
Office of the Attorney General
1024 Capital Center Drive
Frankfort, KY 40601