RENDERED: AUGUST 16, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2017-SC-000112-MR

DATE 9/6/18 Kim Redmon, DC

DONTE LITTLE                                       APPELLANT

V.               ON APPEAL FROM KENTON CIRCUIT COURT
HONORABLE KATHLEEN S. LAPE, JUDGE
NO. 15-CR-00742

COMMONWEALTH OF KENTUCKY                  APPELLEE

**OPINION OF THE COURT BY JUSTICE VANMETER**

**AFFIRMING**

Donte Little appeals as a matter of right[1] from the Kenton Circuit Court's judgment convicting him of two counts of trafficking in a controlled substance in the first degree (less than two grams of heroin), two counts of trafficking in a controlled substance in the first degree (more than two grams of heroin), one count of complicity to trafficking in a controlled substance in the first degree (more than two grams of heroin), and sentencing him to 20 years' imprisonment. For the following reasons, we affirm.

## I. BACKGROUND.

---

[1] Ky. Const. § 115; Ky. Const. § 10.

The undercover narcotics investigation in this case was conducted by Detective David Hoyle and confidential informant D.N., who was working for the Covington Police Department making undercover heroin buys to "work off" her prior drug charges. D.N. was familiar with Little because she had bought heroin from him previously. With respect to this case, D.N. made a total of five undercover buys from Little, each transaction being recorded by a concealed audio and video recording equipment with which D.N. was outfitted, and a transmitter that allowed police to monitor the transaction in real time. After a three-day trial, the jury convicted Little on all five counts for which he had been indicted. This appeal followed.

## II. ANALYSIS.

### a. *Commonwealth's KRE 508 Disclosure of Confidential Informant's Identity.*

Little asserts that the Commonwealth violated the notice requirement set forth in KRE[2] 508 by waiting until 40 hours prior to trial to disclose D.N.'s identity, in violation of the trial court's order directing the Commonwealth to disclose the informant's identity 48 hours before trial. Little had filed a pre-trial motion asking the court to direct the Commonwealth to provide him with the name of the informant at least 30 days prior to trial, and for transcripts of the informant's prior testimony from any case in which she had testified in Kenton County in the past three years. The court denied his motion, but did order the Commonwealth to disclose the informant's name to Little 48 hours

---

[2] Kentucky Rules of Evidence.

2

prior to trial, which the Commonwealth stated was its typical practice. The court further found that since Little had not been declared indigent, he could obtain a copy of the recording of any testimony of public record in Kenton County through the Clerk's office.

On the morning of trial, December 14, 2016, Little moved to exclude the informant's testimony due to the late disclosure. The Commonwealth informed the court that it had attempted to contact Little's counsel numerous times by phone during business hours on December 12, 2016 to provide the informant's name and, when unable to reach counsel by phone, emailed him the name of the informant around 4:20 p.m. that afternoon, approximately eight hours later than the 48-hour disclosure time ordered by the court. Little's counsel conceded that he did not expect the Commonwealth to leave the informant's name on a voicemail, but questioned why the Commonwealth waited until 4:20 p.m. to email him when it could have done so earlier. The trial court denied Little's motion to exclude. Little now argues on appeal that he was prejudiced as a result, and deprived of his due process right to prepare a defense, since the eight-hour delay reduced the time he had to go to the Kenton County Clerk's office and search through three years of drug trial cases to find those in which D.N. had been a confidential informant, and watch the pre-trial and trial CDs. Little also challenges the trial court's imposition of the 48-hour disclosure period to begin with, instead of the 30-day disclosure period he requested.

3

This Court reviews a trial court's evidentiary rulings for an abuse of discretion. *Dunlap v. Commonwealth*, 435 S.W.3d 537, 553 (Ky. 2013). "The test for abuse of discretion is whether the trial [court's] decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* at 554 (internal quotations and citation omitted).

KRE 508 creates a privilege by which the Commonwealth may properly refuse to disclose the identity of an informant, and KRE 508(c) delineates exceptions to the privilege. One of those exceptions is when the informant is a witness for the state. Here, since D.N. was a witness for the Commonwealth, disclosure of her identity was required. KRE 508(c)(1). Notably, KRE 508 places no time constraint on the disclosure. This Court has held, "KRE 508 reflects the decision of the United States Supreme Court in *Roviaro v. United States*, 353 U.S. 53, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957), which indicates that a proper balance regarding nondisclosure must depend on the particular circumstances of each case, taking into consideration the crimes charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors." *Taylor v. Commonwealth*, 987 S.W.2d 302, 304 (Ky. 1998). In *Roviaro*, the Court eschewed rigid rules dictating disclosure, explaining "[t]he problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." 353 U.S. at 62, 77 S. Ct. at 628–29.

In this case, withholding the identity of a material witness until less than two days before a trial was unacceptable. Competent lawyering places

4

demands upon trial attorneys in the days immediately preceding a trial; given the final tasks of trial preparation that can only be done immediately before the trial, a lawyer has no business spending hours researching the background of a material witness to assure effective cross-examination. Forcing a criminal defense lawyer into that position was an abuse of a trial court's discretion. This Court cannot imagine a scenario in which a plaintiff in a slip-and-fall or car wreck case would be allowed to withhold the identity of a material witness until the second day before trial: criminal cases should be no different. Further, if concern for the safety of the material witness was a factor, the late disclosure of critical information is totally ineffective. The guilty drug dealer generally knows his customers and knows who the informant is soon after charges are filed. Only the innocent and falsely-accused defendants are prejudiced by the late disclosure.

That said, Little is unable to articulate any specific prejudice from the late disclosure, and although some measure of prejudice can surely be presumed, this Court does not regard the lack of timely information in this instance as substantial enough to compel a new trial. The Commonwealth provided Little with all the audio and video recordings of the controlled buys with D.N. eleven months before trial. With respect to D.N.'s identity, the record reflects that Little had a prior, two-year history selling heroin to D.N.; we doubt that Little was unable to identify D.N. after listening to and viewing the five recorded transactions. Little argues that the tape quality was poor, and D.N. exhibited some confusion while on the stand at trial, mixing up the controlled

buys in this case with other cases she was working on, therefore impeaching her with her testimony in other cases was crucial to his defense. However, at this point, Little's argument is pure speculation. He did not present to the trial court, and has not presented to this Court, any prior testimony of D.N. that he would have used to undermine her credibility as a witness at trial. Notably, D.N.'s credibility was thoroughly placed into question at trial: she admitted she was a convicted felon and heroin addict, and that she began working as a confidential informant because she was charged with drug trafficking and possession. And in fact, she was incarcerated on new drug charges at the time of Little's trial.

Thus, despite the late disclosure, and the unconscionable 48-hour disclosure period imposed by the trial court, Little was afforded a meaningful opportunity to impeach D.N., and was not deprived of his right to present a meaningful defense. We are unable to say the late disclosure compels a new trial.

### b. *Complicity to Trafficking in a Controlled Substance in the First Degree.*

Little raises three claims of error with respect to the one count of complicity to trafficking in a controlled substance in the first degree. We will address each in turn.

#### i. *Indictment.*

Little asserts that the failure to name his accomplice in the indictment for complicity to trafficking in a controlled substance in the first degree violates his constitutional right to presentment and due process. Prior to trial, the

6

court denied Little's request for disclosure of the accomplice's identity. The Commonwealth argues on appeal that Little failed to preserve the constitutional infirmity argument, but Little maintains that his request for disclosure of the accomplice's identity was sufficient to preserve this issue.

Regardless, even if we accept Little's constitutional claim as preserved, and review it accordingly, we find it lacks merit. Of the five counts of trafficking charged against Little, only one count contained a complicity charge: indicting Little for the offense of first-degree trafficking in a controlled substance, either as principal actor, or in complicity with another. Little relies on the holding in *United States v. Salinas*, 654 F.2d 319 (5th Cir. 1981), *overruled on other grounds by United States v. Adamson*, 700 F.2d 953 (5th Cir. 1983), for the notion that the Commonwealth should not be permitted to expand its theory of the case at trial, but the Commonwealth did no such thing here. In *Salinas*, the indictment charged the defendant with the crime of aiding and abetting a particular, named individual in the misapplication of bank funds." *Id.* at 324. The trial court instructed the jury "to convict if it found that the principal whom Salinas aided and abetted was an officer, director, employee, or agent of the bank." *Id.* On appeal, the Fifth Circuit reversed, holding that the jury instructions improperly modified an essential element of the offense (that that the named principal in fact misapplied these funds) by expanding the class of individuals to include officers, directors, employees, and agents. *Id.* Notably, the *Salinas* court observed that the grand jury could have

charged "unnamed principals" but chose instead to charge a named individual. *Id.*

Unlike in *Salinas*, the indictment charged Little with first-degree trafficking in a controlled substance, either as principal actor, or in complicity with another, and the jury instructions mirrored that language. Thus, neither the Commonwealth nor the trial court impermissibly expanded an element of the charge. Furthermore, Little fails to offer any other legal precedent in support of his assertion that an accomplice must be named in an indictment for complicity. Accordingly, this claim of error is unfounded.

### ii.    *Denial of Directed Verdict.*

Little argues that the trial court should have directed a verdict of acquittal on the charge of complicity to trafficking in a controlled substance in the first degree because the Commonwealth failed to prove his accomplice knowingly trafficked heroin. Little made a token motion for a directed verdict below, but provided no grounds in support thereof; he concedes on appeal that the claim with respect to the sufficiency of the evidence is unpreserved. *See Seay v. Commonwealth*, 609 S.W.2d 128, 130 (Ky. 1980) ("The proper procedure for challenging the sufficiency of evidence on one specific count is an objection to the giving of an instruction on that charge[]"). "Because this [sufficiency] issue is unpreserved, we will review it only for a palpable error that

affected Appellant's substantial rights and resulted in manifest injustice."
*Potts v. Commonwealth*, 172 S.W.3d 345, 348 (Ky. 2005); RCr[3] 10.26.

The law is well settled that, where proof of knowledge is required, the proof can be by circumstantial evidence. *Love v. Commonwealth*, 55 S.W.3d 816, 825 (Ky. 2001). "[D]irect proof of knowledge is not necessary." *Crabtree v. Commonwealth*, 455 S.W.3d 390, 399 (Ky. 2014). Here, the circumstantial evidence of the accomplice's knowledge was sufficient to permit the jury to draw a reasonable conclusion that the accomplice knowingly trafficked heroin. Evidence was presented that Little took money from D.N., told D.N. he had a pair of shoes for her, and then directed D.N. to a red Kia where his accomplice was waiting. When D.N. approached the Kia, the accomplice handed her a pair of shoes containing a large amount of heroin. Little argues that with no evidence to support the accomplice's knowledge regarding the contents of the shoes, proof of complicity failed. However, under the standard for a directed verdict, this Court considers all evidence favoring the Commonwealth as true and determines from that evidence whether a reasonable jury could be induced to believe beyond a reasonable doubt that the defendant is guilty of each and every element of the crime. *Pollini v. Commonwealth*, 172 S.W.3d 418, 429 (Ky. 2005). Considering the evidence presented here, a reasonable jury could have concluded that the accomplice knowingly participated in the heroin

---

[3] Kentucky Rules of Criminal Procedure.

9

transaction; thus, the proof was sufficient to avoid creating a palpable error giving rise to manifest injustice.

   *iii.*  *Jury Instructions.*

  Little maintains that the jury instructions on the charge of complicity to trafficking in a controlled substance in the first degree permitted a non-unanimous verdict. At trial, Little's counsel did not tender any jury instructions, stating instead that he was fine with whatever the Commonwealth tendered and that "they always do a good job." Since this claim of error is unpreserved, we will review it only for palpable error pursuant to RCr 10.26.

  Section 7 of the Kentucky Constitution requires a unanimous jury verdict to sustain a conviction. *Johnson v. Commonwealth,* 405 S.W.3d 439, 448 (Ky. 2013). The right to a unanimous verdict is violated when a trial court gives identical instructions to a jury on multiple counts of a single offense which are adjudicated in one trial. *Harp v. Commonwealth,* 266 S.W.3d 813, 817 (Ky. 2008). A second type of unanimous verdict violation occurs when a jury instruction can be met by any of multiple acts committed by the defendant. *Johnson,* 405 S.W.3d at 449.

  Little contends that the verdict against him is non-unanimous because under the proof presented, the jury could have convicted because it believed he was acting in complicity with the woman in the red Kia who handed D.N. the shoes, or because it believed he was acting in complicity with higher-up drug

10

dealers in Cincinnati.[4] Little argues that because the jury could have been split on the facts of accomplice liability, and the jury instructions did not require identification of the accomplice as an element, his right to a unanimous verdict was violated under *Johnson.*

Notably, the complicity statute, KRS[5] 502.020, does not require proof of the accomplice's identity as an element. Here, the jury was instructed on one count of complicity to trafficking in a controlled substance in the first degree for a transaction that occurred on December 11, 2014. Since the jury was only instructed on a single count, the type of unanimity violation delineated by *Harp* did not occur. Furthermore, D.N. and Det. Coots testified to only a single heroin transaction that occurred on December 11, 2014, and which involved a third person, the woman in the red Kia. As the evidence established only a single act that met the instruction, the type of unanimity violation delineated by *Johnson* did not occur either. Because neither type of unanimity violation occurred, no palpable error resulted.

### c. *Parole Officer's "Good Time" Credit Testimony During Penalty Phase.*

Little argues that incomplete and inaccurate information presented during the penalty phase of trial violated his right to due process and thus this case should be remanded for a new sentencing proceeding. Specifically, he claims that Probation and Parole Officer Marty Fiedler's testimony failed to

---

[4] The investigation in this case contained information that Little might be connected to drug organizations in Cincinnati.

[5] Kentucky Revised Statutes.

indicate that meritorious "good time" credits were not automatic, which led the jury to recommend a 38–year sentence, 18 years more than the Commonwealth requested. This argument is unpreserved, thus we will review it for palpable error under RCr 10.26.

Officer Fiedler explained to the jury the four types of "good time" credit available to inmates: statutory, meritorious, educational, and work. She testified that meritorious credit is seven days per month that is given to all offenders if not cited for bad behavior and statutory credit is 10 days given all offenders (excluding violent and sex offenders) and can be taken away due to disciplinary actions. The Commonwealth clarified with Officer Fiedler that between meritorious and statutory credit, so long as one behaves in prison, one earns 17 days, 170 days every 10 months, or around 200 days per year. Officer Fiedler testified that taking into account Little's 20% parole eligibility, and the "good time" credits, if sentenced to 20 years, Little would spend only four years in prison before going before the Parole Board, could then get paroled, and spend 16 years on probation, minus the two years off the back end of his sentence from earning "good time" credits.

Little argues that the Commonwealth failed to convey that under KRS 197.045, only prior time served and educational credits are automatically awarded.[6] He further maintains that the Commonwealth failed to elicit

---

[6] KRS 197.045 provides (1) Any person convicted and sentenced to a state penal institution:
    (a) Shall receive a credit on his or her sentence for:
    1. Prior confinement as specified in KRS 532.120;

12

testimony from Officer Fiedler that "good time" credits are not automatically awarded, nor in any real sense "earned" by good behavior; rather, the credits are a complete matter of grace. Little emphasizes that under the statute, a prisoner "may" receive "good time" credits, including statutory and meritorious good time, at the complete discretion of the commissioner. Moreover, Little asserts that the Commonwealth failed to inform the jury that all sentence credits, including educational credits, may be forfeited at the complete discretion of the commissioner, and are in no way guaranteed to any prisoner.

Our review of Officer Fiedler's testimony reveals that she correctly explained to the jury that an inmate can receive four types of sentence credits, thereby reducing their overall sentence. She accurately testified that by working a job in prison, an inmate can accumulate work time credit; educational time credit was predicated on the successful completion of a

---

2. Successfully receiving a High School Equivalency Diploma or a high school diploma, a two (2) or four (4) year college degree, a two (2) year or four (4) year degree in applied sciences, a completed technical education program, or an online or correspondence education program, each as provided and defined by the department, or a civics education program that requires passing a final exam, in the amount of ninety (90) days per diploma, degree, or technical education program completed; and

3. Successfully completing a drug treatment program or other evidence-based program approved by the department, in the amount of not more than ninety (90) days for each program completed; and

(b) May receive a credit on his or her sentence for:

1. Good behavior in an amount not exceeding ten (10) days for each month served, to be determined by the department from the conduct of the prisoner;

2. Performing exceptionally meritorious service or performing duties of outstanding importance in connection with institutional operations and programs, awarded at the discretion of the commissioner in an amount not to exceed seven (7) days per month; and

3. Acts of exceptional service during times of emergency, awarded at the discretion of the commissioner in an amount not to exceed seven (7) days per month.

13

qualifying program; meritorious time credit was conditioned upon good behavior; and statutory time credit can be taken away due to disciplinary actions. Her testimony conveyed to the jury that sentence credits were not automatic or guaranteed, and that under certain circumstances, they may be withheld or forfeited. The jury was sufficiently informed as to the potential effect of sentence credits on any sentence it recommended. Moreover, the jury's recommended 38-year sentence was capped at 20 years by the trial court. Thus, Little has failed to show any palpable error occurred.

### d. *Prosecutor's Closing Argument.*

Little contends that the prosecutor's closing argument during the penalty phase of trial amounted to flagrant misconduct because it exhorted the jury to recommend a harsher sentence under an inapplicable law. He also claims the prosecutor's "send a message" remarks during closing argument violated his right to due process. Little concedes neither claim of error is preserved; accordingly, "we will review it for palpable error, reversing a conviction based on prosecutorial misconduct during closing argument only if that misconduct was flagrant." *Lewis v. Commonwealth*, 475 S.W.3d 26, 37 (Ky. 2015).

During the penalty phase of trial, Officer Fiedler testified that Little would be eligible for parole after serving 20% of his sentence. Thereafter, the prosecutor asked whether parole eligibility had changed since 2014 for the counts involving two or more grams of heroin. She responded that it had; parole eligibility on those counts would have been set at 50% if the crimes had occurred after March 15, 2015. In addition, she confirmed that the legislature

14

had enacted a new statute making it a crime to import heroin into Kentucky for the purpose of trafficking, and similarly setting parole eligibility at 50%. Officer Fiedler agreed that given a 20-year sentence, Little would meet the parole board after serving four years. But if he had committed the crimes after March 2015, Little would have had to wait 10 years to meet the parole board. At no time did Little object to this testimony, nor does he challenge it on appeal.

During closing argument, the prosecutor argued:

> The legislature has made a statement. They have said we are not doing this anymore. They have changed the penalties. They have made it now 50% parole eligibility and they created a new crime for people like Mr. Little that he would have been subject to – who bring heroin from Cincinnati to Kentucky for the purpose of trafficking.

The longstanding rule in Kentucky is that "counsel has wide latitude while making opening or closing statements. [A[ prosecutor is . . . entitled to draw reasonable inferences from the evidence, as well as respond to matters raised by the defense." *Lewis*, 475 S.W.3d at 38 (internal quotations and citations omitted). Because Little failed to object to Officer Fiedler's testimony regarding either the recently increased parole eligibility for the crime, or the new crime of importing heroin, and has not objected to that testimony before this Court on appeal, Officer Fiedler's testimony in this regard remains unchallenged, admitted evidence. Accordingly, the prosecutor was permitted to comment on that testimony during closing argument and no palpable error resulted.

Nor was the following portion of the prosecutor's "send a message" argument so improper as to rise to the level of palpable error:

15

You have heard the Kentucky Legislature has sent a message to the Cincinnati heroin traffickers and to those here in the state of Kentucky. They sent a message loud and clear that said don't do it or you're going to pay a much steeper price. Ladies and Gentleman, today I'm asking you to send the same message. I'm asking you to send it to the people sitting at the jail, the heroin traffickers in Cincinnati who think every day about driving over here and selling their heroin, and those people here in Kenton County that are thinking about doing the same thing. I'm asking you to send them a message and say we're tired of hearing about overdoses on the news, we're tired of all these families having to support their loved ones. Do not peddle your poison here in Kenton County unless you want to pay a heavy price. Ladies and Gentlemen, I'm asking you to send a message by the only way these people understand and sentence him to 20 years.

This Court confronted a similar "send a message" penalty phase closing argument made by the prosecutor in *Brewer v. Commonwealth*, 206 S.W.3d 343, 350 (Ky. 2006). In *Brewer*, we held that while the argument may have constituted ordinary error, it did not amount to palpable error, especially since the prosecutor's remarks were a response to defense counsel's plea for leniency, and the evidence against the defendant was overwhelming. *Id.* at 350–51. Thus, we did not find a substantial probability that the prosecutor's argument seriously affected the overall fairness of the proceedings, given the context in which the comments were made, and upon consideration of the overall trial. *Id.* at 351. As in Little's case, the prosecutor's "send a message" remarks in *Brewer* were made during the penalty phase of trial, not the guilt phase. In *Cantrell v. Commonwealth*, 288 S.W.3d 291, 299 (Ky. 2009), we emphasized the importance of this distinction, noting that a "send a message" argument at the penalty phase of trial is not inappropriate so long as it focuses on deterrence:

16

> [I]t is essentially illogical, at the sentencing phase, to say that the prosecutor cannot encourage the jury to impose a sentence that speaks to deterrence, as well as punishes the specific crime before it. Deterrence is clearly not intended for that defendant alone, but rather his sentence sends the message to all others so inclined that their crimes will be punished, and that a jury made up of local citizens will not tolerate such offenses. This is a significant part of the benefit of public trials. We continue, however, to disapprove of this argument at the guilt stage. And even at the penalty phase, the "send a message" argument shall be channeled down the narrow avenue of deterrence. Any effort by the prosecutor in his closing argument to shame jurors or attempt to put community pressure on jurors' decisions is strictly prohibited. Prosecutors may not argue that a lighter sentence will "send a message" to the community which will hold the jurors accountable or in a bad light.

*Id.* This Court reiterated its continued disapproval of "send a message" arguments at the guilt stage, but held that the argument made at the penalty stage did not amount to ordinary error: "so long as the jury is well aware that it is sentencing the particular defendant before it – with his or her good points and bad – on the crime for which he or she has been convicted, there is no prejudice in the prosecutor commenting on the deterrent effect of that sentence." *Id.*

Here, a great deal of Little's penalty phase argument was devoted to a plea for leniency. Defense counsel emphasized Little's lack of a prior record and stated, "he's certainly begging the jurors to give him some leniency in this case and not to – I can't think of a better word than 'hammer' – but not to give him an extremely high sentence." Defense counsel closed his remarks with, "Begging the jury for leniency, thank you." As in *Brewer*, the Commonwealth here was permitted to respond to defense counsel's plea for leniency.

17

Further, the evidence against Little was overwhelming: all five heroin transactions were recorded, the recordings corroborated the testimony of the confidential informant, and Little is heard on the recordings orchestrating the transactions. The prosecutor's "send a message" remarks were directed at Little, "heroin traffickers in Cincinnati," "and those people here in Kenton County that are thinking about doing the same thing." The message the prosecutor asked the jury to send was, "Do not peddle your poison here in Kenton County unless you want to pay a heavy price." Thus, the prosecutor's argument was directed at Little, heroin dealers, and focused on deterrence. Under these circumstances, we decline to hold that the prosecutor's closing remarks amounted to palpable error.[7]

### III. CONCLUSION.

For the foregoing reasons, we affirm the Kenton Circuit Court's judgment and sentence.

All sitting. All concur.

---

[7] We note that Little relies on our recent decision in *Lewis* as support for his assertion that a "send a message" argument "may still be considered error in Kentucky." However, Lewis involved a "send a message" argument made during the guilt phase of trial. 475 S.W.3d at 37. Therefore, its holding does not affect this Court's ruling in *Cantrell*, which controls under these circumstances.

18

COUNSEL FOR APPELLANT:

Brandon Neil Jewell
Assistant Public Advocate
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Micah Brandon Roberts
Assistant Attorney General