RENDERED: SEPTEMBER 25, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1410-MR

MICHAEL HARPER          APPELLANT

            APPEAL FROM KENTON CIRCUIT COURT
v.        HONORABLE GREGORY M. BARTLETT, JUDGE
            ACTION NO. 18-CR-01442

COMMONWEALTH OF KENTUCKY          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: GOODWINE, K. THOMPSON, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE: Michael Harper appeals from his conviction of

possession of a handgun by a convicted felon[1] and of being a first-degree persistent

felony offender.[2] Appellant argues that the trial court erred by allowing irrelevant

---

[1] Kentucky Revised Statutes (KRS) 527.040.

[2] KRS 532.080(3).

and highly prejudicial testimony during trial and that the Commonwealth made improper statements during the closing argument of the penalty phase. Finding no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On October 1, 2018, Appellant went to a business called Kentucky Tire. Kentucky Tire was owned by Eric Mitchell. Tim Kimbrough was an employee of Kentucky Tire and was the paramour of Appellant's ex-girlfriend, Ryane Johnson. Appellant and Ms. Johnson had a child together. Ms. Johnson, Mr. Kimbrough, and the minor child were all living together. Appellant went to Kentucky Tire with a gun and began threatening Mr. Kimbrough and Mr. Mitchell. Appellant had been having arguments with Ms. Johnson and Mr. Kimbrough over the raising of the minor child and this is presumably what caused the altercation. Appellant eventually left the store, and Mr. Mitchell called the police. Appellant was swiftly located and apprehended; however, no gun was on his person when he was arrested. A gun was found nearby the location of his arrest and in an area a witness witnessed him leaving.

Appellant was indicted for being a felon in possession of a firearm and for being a first-degree persistent felony offender. After a jury trial, Appellant was found guilty of these charges and sentenced to eighteen years in prison. This appeal followed.

## ARGUMENTS AND ANALYSIS

Appellant's first argument on appeal is that the trial court erred in allowing irrelevant and prejudicial testimony. Specifically, Appellant takes issue with the following testimony: Mr. Mitchell stated that he was scared that Appellant would fire the gun Appellant was pointing at him; Mr. Kimbrough testified that Appellant threatened to shoot him; Mr. Kimbrough testified that his relationship with Appellant was strained because they disagreed on how to discipline the minor child; and Ms. Johnson testified that Appellant and Mr. Kimbrough had disagreements about the child. Appellant claims this evidence was irrelevant because it did not go to show that he was in possession of a firearm and was highly prejudicial. Appellant equates this testimony with prior bad acts evidence prohibited by Kentucky Rules of Evidence (KRE) 404(b).

We disagree with Appellant and conclude that this testimony was proper. The testimony of Mr. Mitchell and Mr. Kimbrough was a description of what happened the day in question. Ms. Johnson's testimony helped explain why Appellant might have possessed the gun.

> One of the accepted bases for the admissibility of
> evidence of other crimes arises when such evidence
> furnishes part of the context of the crime or is necessary
> to a full presentation of the case, or is so intimately
> connected with and explanatory of the crime charged
> against the defendant and is so much a part of the setting

of the case and its environment that its proof is appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae or the uncharged offense is so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other . . . [and is thus] part of the res gestae of the crime charged.

*Webb v. Commonwealth*, 387 S.W.3d 319, 326 (Ky. 2012) (internal quotation marks and citations omitted).

Here, what occurred at Kentucky Tire and why Appellant was angry with Mr. Kimbrough were relevant to the circumstances of the crime and were required to present a full presentation of the case. This testimony was especially relevant because of Appellant's defense. At trial, Appellant's defense was that the witnesses who stated they saw Appellant in possession of the firearm were lying because of the issues surrounding the child, and they were trying to frame Appellant. In addition, during opening argument, Appellant's counsel mentioned the disagreements regarding the raising of the child. The reasons why he had the gun and what he did with the gun were relevant to helping prove that he, in fact, did have the gun. There was no error in allowing the testimony of Mr. Mitchell, Mr. Kimbrough, or Ms. Johnson, and this testimony was not overly prejudicial.

Appellant's second argument is that the prosecution made an improper statement during the closing argument of the penalty phase. During the Commonwealth's closing argument in the penalty phase of the trial, the prosecutor

-4-

stated: "Ladies and gentlemen, I'm going to ask you to send a message to all the other career criminals . . . ." At this point, the defense objected, and the objection was sustained. A bench conference ensued where the Commonwealth introduced the case of *Little v. Commonwealth*, 553 S.W.3d 220 (Ky. 2018). *Little* held that a "send a message" argument during the closing argument of the penalty phase is permissible so long as it is limited to discussing the deterrence of other criminals. *Little* also cited to *Cantrell v. Commonwealth*, 288 S.W.3d 291 (Ky. 2009), which held similarly.

After reading *Little*, the trial judge changed his mind and allowed the Commonwealth to make its "send a message" argument. The prosecutor went on to say: "Send a message to the career criminals to stay out of Kenton County and quit committing crimes." At the end of the Commonwealth's closing argument, defense counsel moved for a mistrial, but that motion was denied.

We conclude that the Commonwealth did not err in making the "send a message" statements. *Little* and *Cantrell* are on point. The Commonwealth's "send a message" argument occurred in the penalty phase and focused on deterrence; therefore, there was no error.[3]

---

[3] *Little* and *Cantrell* reiterated that the "send a message" argument could not be made during the guilt phase, only during the penalty phase.

# CONCLUSION

Based on the foregoing, we find no error and affirm the judgment of the trial court.

GOODWINE, JUDGE, CONCURS.

THOMPSON, K., JUDGE, CONCURS IN PART, DISSENTS IN PART, AND FILES SEPARATE OPINION.

THOMPSON, K., JUDGE, CONCURRING IN PART AND DISSENTING IN PART:  I respectfully concur in part and dissent in part.  I agree with the majority opinion that it was appropriate for the trial court to allow testimony from witnesses about Michael Harper threatening them with his gun.  In the context of the guilt phase this was not prejudicial.  However, I disagree about the majority opinion's resolution on the "send a message" issue.

Harper argues that considered in light of the evidence permitted during the guilt phase, the prosecution's "send a message" argument was not focused on deterrence but rather on getting the jury to punish Harper for threatening to shoot one witness and scaring another that he might be shot, thus putting community pressure on the jury's decision.  I agree with Harper that given this testimony, the trial court erred in permitting the particular "send a message" argument offered, where Harper made a contemporaneous objection.

The majority opinion devotes very little space to exploring Harper's argument, primarily relying upon *Little v. Commonwealth*, 553 S.W.3d 220 (Ky. 2018), which is not on point but was the basis for the trial court's ruling. *Little* was examining an unpreserved "send a message" closing argument. As the standard for establishing palpable error is far different from reviewing a preserved error, *Little* should not be relied upon to justify the outcome here.

Although the majority opinion does cite to *Cantrell v. Commonwealth*, 288 S.W.3d 291 (Ky. 2009), which involved a preserved error, it does not examine this precedent. In *Cantrell*, the Kentucky Supreme Court departed from its earlier view as expressed in *Brewer v. Commonwealth*, 206 S.W.3d 343, 351 (Ky. 2006), that a prosecutor's "exhortation to [the] jury to 'send a message' to the community [is] improper." It clarified that "comment on the deterrent effect of a sentence has been held proper[]" and that "[d]eterrence is clearly not intended for [the] defendant alone, but rather his sentence sends the message to all others so inclined that their crimes will be punished, and that a jury made up of local citizens will not tolerate such offenses." *Cantrell*, 288 S.W.3d at 298-99.

However, the *Cantrell* decision did not give prosecutors free reign to urge juries to "send a message" in any penalty phase in any manner desired, explaining that such comments are not prejudicial only "so long as the jury is well

aware that it is sentencing the particular defendant before it—with his or her good points and bad—on the crime for which he or she has been convicted," and "[a]ny effort by the prosecutor in his closing argument to shame jurors or attempt to put community pressure on jurors' decisions is strictly prohibited." *Id.* at 299.

Each case needs to be considered on its own merits. We must consider "the overall trial and the context in which the comments in question were made[.]" *Brewer*, 206 S.W.3d at 351.

In *Cantrell*, the prosecutor's argument homed in on the case being the first prosecution for manufacture of methamphetamine in the county, and the focus was on deterring that particular crime from that county with a harsher sentence. Here, in contrast, Harper committed the more ordinary crime of being a felon in possession of a handgun, and the jury was exhorted generally to send a message to "career criminals" to "quit committing crimes."

The leeway permitted to the prosecution in establishing Harper's guilt merited a stricter observation of the proper bounds of a "send a message" argument during the penalty phase. Because the jury received information that Harper committed additional uncharged crimes,[4] the prosecutor's exhortation pressured the jury to punish Harper not just for his specific crime, but for his additional

---

[4] The additional charge against Harper for terroristic threatening was severed for a separate trial.

uncharged crimes.  This cannot be tolerated and merits reversal of his sentence for

a new penalty phase.

Accordingly, I concur in part and dissent in part.

BRIEFS FOR APPELLANT:

Julia K. Pearson
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Lauren Lewis
Assistant Attorney General
Frankfort, Kentucky